IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNETTE ORTEGA, ) | |
| ) | |
| Plaintiff, ) | No. 16 C 10938 |
| ) | |
| v. ) | Magistrate Judge Michael T. Mason |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Annette Ortega ("claimant") filed a motion for summary judgment seeking referral of the final decision of the Commission of Social Security ("Commissioner") denying her claim for disability benefits. The Commissioner has filed a cross-motion asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). For the reasons set forth below, claimant's motion for summary judgment [14] is denied, and defendant's cross-motion [15] is granted.

I. **BACKGROUND**

A. **PROCEDURAL HISTORY**

Claimant filed an application for disability insurance benefits on April 17, 2012, alleging disability beginning April 9, 2008 due to thyroid nodules, acid reflux, depression, and lupus. (R. 1.) Claimant's initial application was denied on July 18, 2012, and upon reconsideration on November 26, 2012. After an administrative hearing, the ALJ issued an unfavorable decision on September 13, 2013. (*Id.*) After a hearing held on March 18, 2015, the ALJ entered an unfavorable decision. The Appeals Council

denied review on September 26, 2016, making the ALJ's June 4, 2015 decision the final agency decision. (R. 388.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## B. RELEVANT MEDICAL EVIDENCE

Claimant seeks disability insurance benefits due to thyroid nodules, acid reflux, depression, and lupus.

### 1. Treating Physicians

Claimant's primary care physician, Dr. Miroslaw Kuptel, treated claimant over the course of several years. Dr. Kuptel's progress notes are largely illegeible, but it appears he treated claimant for a thyroid nodule (R. 395-06), mammograms (R. 435-49), cough and running nose (R. 583), knee pain (R. 584), and blood work. (R. 582-588.) At some point, Dr. Kuptel also diagnosed claimant with lupus. Dr. Kuptel stated that claimant has systemic lupus with chronic joints pain in the knees, shoulders, and hands. (R.454.)

The record reveals that Dr. Shanika Samarasinghe concluded claimant has a 4 cm. left sided thyroid nodule that is stable in size, with two small sub-centimeter nodules in the right lobe that remain stable. (R. 398.) On October 10, 2011, Dr. Kuptel noted in his progress notes that claimant denied any compressive symptoms resulting from her thyroid nodules and claimant was not interested in surgical removal. (R. 395.) The thyroid nodules tested negative for malignancy and were consistent with a benign thyroid nodule. (R. 396.) Dr. Kuptel concluded they could reduce the frequency of surveillance and only monitor the nodules once a year. (*Id.*)

In an ultrasound performed September 27, 2011, Dr. Samarashinghe concluded that the nodules in the right lobe of the thyroid and the cystic nodule in the left lobe were both stable (R.406.) Dr. Samarasinghe ordered another ultrasound of claimant's

2

nodules on October 16, 2012, to monitor the growth of the nodules. (R.526.) Dr. Samarasinghe concluded that claimant has stable nodules in the right lobe of the thyroid and the cystic nodule had decreased in size. (*Id.*)

It appears that in early 2012, Dr. Kuptel referred claimant to another physician for her knee pain. On 2/21/12, Dr. Sonia Bobra opined that claimant had mild/moderate tricompartmental osteoarthritic degenerative changes of the left knee. (R. 593.)

Dr. Kuptel concluded in a letter May 29, 2012, that claimant had difficulty sitting, walking, standing, bending over, reach, grabbing and holding. (R. 454.) He stated that claimant was depressed from chronic pain and he noted a "big propability [sic] of her health failure deterioration." (*Id.*) In a physical capacity evaluation dated October 9, 2012, Dr. Kuptel noted that claimant cannot squat, bend, lift, climb, crawl or twist. (R.528.) He opined that she was unable to work, that her condition was constant and caused severe limitation in performing activities, and that she could sit and/or stand for less than 2 hours. (*Id.*) He also stated that she was more likely to suffer from additional medical problems in the future. (*Id.*)

In an MRI on January 7, 2013, it was noted that claimant suffered from knee pain. (R. 591.) Findings included: a small intra-articular effusion and a moderate sized cyst, a complex tear of medial meniscus, anterior, body and posterior horns were intact without evidence of tear, anterior and posterior ligaments were intact, and tendons were unremarkable. (R. 591-92.) Claimant was directed to follow up as needed. (*Id.*)

### 2. Agency Consultants

On July 3, 2012, claimant saw Dr. Jorge Aliaga for a consultative examination. Dr. Aliaga noted a history of thyroid nodules, but claimant denied any symptoms

3

compatible with hyper-thyroidism and any neck pain or masses. (R.494.) Dr. Aliaga addressed claimant's history of lupus since 1993, and noted that she has been affected in both hands, left knee, and gets episodes of pain about every six weeks in the lower back. (*Id.*) However, he noted that claimant can control her symptoms with Prednisone. At the time of the consultative examination, claimant had just finished her last course of Prednisone and had minimal discomfort in the hands and left knee. (*Id.*) Dr. Aliaga noted that claimant had some limitations in standing and walking when she has flare-ups. (R.495.) Claimant reported she can do activities of daily living normally and perform her household chores. (*Id.*) Her low back pain had also improved. (R. 494.)

Dr. Aliaga examined claimant's back and spine and concluded that she had full active range of motion of both the thoracic and lumbosacral spine. (R. 496.) Dr. Aliaga found that claimant showed a slight favoring of the left leg, but otherwise demonstrated normal and stable, posture and gait. (*Id.*) Claimant was also able to walk more than fifty feet without the use of an assistive device. (*Id.*) Dr. Aliaga concluded that she had only mild difficulty getting on and off the examination table. (R. 497.) Claimant also had mild difficulty completing the "heel-walk" and "toe-walk." (*Id.*) Dr. Aliaga found that claimant could independently squat and arise 150 degrees of knee flexion. (*Id.*)

On July 3, 2012, claimant had a psychological evaluation with Dr. Don White for her claims of depression. Dr. White stated that the claimant's mood and affect reflected poor sleep, depressed mood, crying spells, and no suicidal thought. (R. 501.) The claimant has no family history of mental illness and no previous physical abuse. (*Id.*) Claimant was prescribed Doxepin (50 mg.) (*Id.*) Dr. White concluded that the claimant suffered from a mild mood disorder due to her general medical condition.

### 3. Claimant's Testimony

On March 18, 2015, claimant testified before the ALJ regarding her impairments. Claimant testified that she lived with her spouse and has two children and four grandchildren. (R. 48.) She previously worked for 26 years as an office manager where her daily duties included: inputting daily orders, billing, and occasionally loading and unloading trucks once or twice a week. (R. 39.) Claimant further testified that she stopped working when that company closed, but she continued to look for work afterwards. (*Id*.) Claimant explained that she stopped looking for work because she believed that she could no longer sit for an eight-hour work day due to pain she was experiencing in her back and her hands. (R. 40.) She also explained she had two back surgeries while she was employed, and she returned to work after each surgery. (R.41.)

Additionally, claimant states that she suffers from lupus outbreaks every six weeks, which cause her joints to swell, and she takes Prednisone to help with the pain. (R. 42.) She explained that each course of prednisone is about two weeks and it takes about a week for the pain to subside. (R.42.) At the time of the hearing, claimant was taking the following medications: Voltaren (75 mg) for acid reflux, Lisinopril (10 mg) for blood pressure, Pravastatin (20 mg) for cholesterol, Zolpidem (10 mg) to help her sleep, Centroid for her thyroid, and Plaquenil (200 mg) to help treat lupus. (R. 44-45.) She tries not to take Doxepin (prescribed for depression) because it makes her "dopey". (R. 44.)

The ALJ asked the claimant about her daily activities and she testified that she is still able to drive on occasion and dress and bathe herself. (R. 47-48.) She has trouble cleaning her house and cooking because it is difficult for her to stand over the stove. (R. 47.) The ALJ asked claimant if she uses any assistive device to get around such as a

cane or crutches. (R. 49.) Claimant stated that she uses a cane every day and without a cane she can only stand for about 20 minutes or walk about a block. (*Id*.)

### 4. Vocational Expert Testimony

The vocational expert ("VE") also offered testimony at the hearing before the ALJ. She determined that the claimant would no longer be able to perform her past work due to the exertional levels but that there were transferable skills related to the office manager position. (R. 52.) The VE testified that examples of work would include front office manager at a hotel, receptionist, and order clerk. (R. 53.) Further, the VE testified that those jobs would not require any overhead lifting, climbing, crawling, twisting, squatting, or bending. (R. 54.) The ALJ asked the VE if the amount of sitting was reduced to only two hours in a eight hour workday, if it would allow for any form of employment. (*Id*.) The VE replied that it would not allow for the office manager, receptionist, or order clerk positions because those are considered sedentary. (*Id*.)

Additionally, with respect to absenteeism, the ALJ asked the VE if an individual were to miss one week of work every six weeks would that allow for any of the jobs that she cited. (R. 55.) The VE replied that in her experience, that would exceed any employer's tolerance for excused absences, which is approximately 10-12 per year. (*Id*.)

## C. Legal Analysis

### 1. Standard of Review

The Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42. U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). We must consider the entire administrative record, but will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgement for that of the Commissioner." *Lopez*, 336 F.3d at 539 (quoting *Steele*, 290 F.3d at 940).

Although this court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The ALJ "must build an accurate and logical bridge from the evidence in the record." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate [her] assessment of the evidence to 'assure us that the ALJ considered the important evidence…[and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 990 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted)).

2. **Analysis under the Social Security Act**

To qualify for DIB, a claimant must be disabled within the meaning of the Act. In determining whether a claimant is disabled, the ALJ must consider the following five step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 885-86. If the claimant reaches step five, the burden then shifts to

7

the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id*. at 886.

The ALJ followed this five-step analysis here. First, at step one, the ALJ found that claimant had not engaged in substantial gainful activity during the period from her alleged onset through her date last insured. At step two, the ALJ found that the claimant had the following severe impairments: lupos, degenerative disc disease of the lumbar spine, and degenerative joint disease. At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404.1520(d), 404.1525, and 404.1526.

At step four, the ALJ found that through January 1, 2013, claimant had the residual functioning capacity ("RFC") to perform light work that involved frequent handling and fingering, occasional ramp and stair climbing, in a work environment exclusive of any ladder, rope or scaffold climbing requirements. The ALJ also found that because of claimant's age, after January 3, 2013 and through the date of claimant's last insured, claimant had the RFC for performing sedentary work involving: standing and/or walking no more than 2 hours in an 8-hour work day, as well as the other limitations noted above. At step five, the ALJ found that claimant was unable to perform any past relevant work but that she had acquired work skills from past relevant work that were transferable to other occupations available in the national economy. As a result, the ALJ found that claimant was not disabled under the Act.

Ortega now argues that the ALJ erred in assessing claimant's RFC, the credibility of her testimony and the step five analysis. We address each of her arguments below.

8

### 3. The ALJ's RFC Determination Is Supported by Substantial Evidence.

Claimant first argues that the ALJ failed to properly weigh the opinion evidence of record and fully develop the record in determining her RFC. A claimant's RFC is the most he or she can do despite limitations and is determined by assessing all the relevant evidence. 20 C.F.R. § 404.1454.(a)(1). Claimant asserts that the ALJ's RFC determination is not supported by substantial evidence.

<u>Dr. Kuptel's Opinion</u>

First, claimant argues that as part of her RFC determination, the ALJ improperly disregarded the opinion of treating physician Dr. Kuptel. A treating physician's opinion is generally entitled to controlling weight; however, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not contradicted by other substantial evidence." *Lloyd v. Berryhill*, 682 F. App'x 491, 496–97 (7th Cir. 2017) (holding that the ALJ properly gave minimal weight to treating physician who "without corroborating objective evidence, severely downplayed [claimant's] capabilities."); *see also* 20 C.F.R. § 404.1527(c)(2); *see also Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight only if it is (1) well-supported by medical findings, and (2) consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The SSR require that an ALJ must offer "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

Moreover, the Seventh Circuit has held that an ALJ must only "minimally articulate" her reasons for discounting a treating source's opinion. *Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008). This standard is a "very deferential standard that we

9

have, in fact, deemed 'lax.'" *Id.* (quoting *Berger v. Astrue,* 516 F.3d 539, 545 (7th Cir.2008)). Once well-supported contradictory evidence is introduced, the treating physician's opinion is no longer controlling but remains a piece of evidence for the ALJ to weigh. *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir.2006). Under 20 C.F.R. § 404.1527(d)(2), the factors relevant to evaluating a treating physician's opinion are: the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and supportability of the physician's opinion. 20 C.F.R. § 404.1527(d)(2); *Wurst v. Astrue*, 866 F. Supp. 2d 951, 962 (N.D. Ill. 2012).

Here, we find that the ALJ adequately articulated her reasons for giving Dr. Kuptel's opinion minimal weight. The ALJ acknowledged that in a physical capacity evaluation, Dr. Kuptel opined that claimant had significant limitations. The ALJ also described in detail the other medical evidence in the record that does support her RFC determination, and then noted that she was giving Dr. Kuptel's evaluation minimal weight because it was not supported by evidence in the record. The ALJ specified that the physical evaluation contradicted Dr. Kuptel's own progress notes, claimant's own activity level, and a consultative examination in June of 2012. Because we find that the ALJ adequately articulated her reasons for giving Dr. Kuptel's physical evaluation minimal weight, this is not grounds for remand. *Wurst*, 866 F. Supp. 2d at 962 (upholding an ALJ's opinion to discard the treating physician's evaluation where it was not supported by the physician's own treatment notes).

Claimant also argues that Dr. Kuptel's treatment notes establish a lengthy relationship, but the records to which she cites are not all Dr. Kuptel's medical records,

and those that are legible do not necessarily corroborate the Dr. Kuptel's physical evaluation. Indeed, these records demonstrate that Dr. Kuptel found nothing disabling about claimant – i.e., "no acute distress" (R. 403), normal neurologic findings and muscle strength and tone (R. 403, "mild degenerative bone changes" (R. 435).

For these reasons, we find that it was appropriate for the ALJ to determine that the medical evidence failed to support the limitations offered in Dr. Kuptel's May and October 2012 opinions.

### The ALJ's RFC For the Period Commencing in January of 2013

Next, claimant argues that commencing on January 1, 2013, the ALJ failed to fully develop the record in making her determination that she could perform sedentary work. Claimant argues that "it is unclear how the ALJ determined that Plaintiff's condition changed as of January 1, 2013, without relying on her own lay interpretation of the medical evidence."

We find this argument to be without merit. The ALJ noted several medical records dated January 1, 2013 through October of 2014, which reflected claimant's difficulties with her knee. The ALJ explained how these records support her finding that claimant is capable of sedentary work but no longer capable of doing light work. (R. 24-25.) As a result, we find that the ALJ adequately explained her reasons for making this finding.

### The ALJ's Findings on Her Wrist and Hand Symptoms

Next, claimant argues that the ALJ's analysis of her wrist and hand symptoms is not supported by substantial evidence. She asserts that the ALJ should not have limited her to no more than "frequent" handling because of her chronic hand and wrist

11

pain as a result of her arthritis and lupus. Claimant's argument relies primarily on her own at the hearing.

Here, we find that the ALJ properly accounted for claimant's wrist and hand issues. She noted that a 2005 progress note reflected problems with mild degenerative joint disease of the wrist. The ALJ also noted that although claimant complained of hand pain, her condition improved after a course of medication or injections and subsequent medical records indicate "hands ok" and "no joint pain." (R. 21, 621, 634.) Moreover, the ALJ properly considered the credibility of claimant's testimony (discussed further below). For these reasons, we do not find that the ALJ's findings regarding claimant's ability to use her hands and wrists is grounds for remand.

<u>The ALJ's Questioning at the Supplemental Hearing</u>

Next, claimant argues that the ALJ erred in only asking questions at the hearing about her condition at that time, rather than during the relevant period. Again, we find that claimant's argument is misplaced. Indeed, the ALJ asked claimant, among other things, about her back pain level in the past, what her past treatment had been, what medications she took at that time, how much weight she lifted in her past employment, and how often she had lupus outbreaks. (R. 38-45.) Therefore, we do not find claimant's argument persuasive.

4. **The ALJ's Credibility Finding is Supported by Evidence in the Record**

Next, claimant argues that the ALJ's credibility determination is not support by substantial evidence. To succeed on this ground, claimant must overcome the highly deferential standard we accord credibility determinations. Because the ALJ is in the best position to evaluate the credibility of a witness, we only reverse an ALJ's credibility

12

finding if it is "patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). The ALJ must "explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue,* 641 F.3d 884, 890 (7th Cir. 2011).

Under the Act, an "individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…. which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A). Consistent with the Act, the Seventh Circuit has held that "although a claimant can establish the severity of his own testimony, his subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

Here, we find that the ALJ's findings regarding claimant's testimony are not patently wrong. First, the ALJ articulated how the medical records do not support her complaints regarding her hand and wrist complaints, and that her musculoskeletal examinations were largely unremarkable. The ALJ also noted that the evidence reveals that claimant felt well enough to look for work after her job came to an end. She also noted that the record does not reflect treatment for her back pain consistent with her

13

complaints. The ALJ also observed that claimant had no problems gardening, cleaning her home, doing laundry, grocery shopping, and travelling. The ALJ concluded that such evidence contradicts allegations of disabling pain that the claimant contends.

It is clear that the ALJ's credibility finding was based on a consideration of the entire case on record. Contrary to claimant's suggestion, the ALJ's credibility determination contains specific reasons supported by the evidence in the case record. The court defers to an ALJ's credibility determination and shall overturn it only if it is patently wrong. Here, the ALJ fully weighed the claimant's complaints and alleged limitations and found them not supported by the objective medical evidence, work history, and her own activity level. For these reasons, we cannot say that the ALJ's credibility determination was "patently wrong." Instead, we find that the ALJ gave reasons for her assessment, and built a logical bridge to her conclusion that claimant is only moderately restricted in activities of daily living.

### 5. The ALJ's Step Five Determination Is Supported by Substantial Evidence.

Finally, claimant argues that the ALJ's step five findings were incorrect because her hypothetical to the VE did not adequately account for her physical limitations. After finding that claimant could not perform her past relevant work, the ALJ asked the VE whether a hypothetical person with the same age, educational background, work history, and RFC could perform other jobs in the national or regional economy. The VE testified that this person could perform jobs as office manager, receptionist, and order clerk.

Here, we agree with defendant that the ALJ's hypotheticals included those limitations that the ALJ found credible. "The ALJ is required only to incorporate into

14

his hypotheticals those impairments and limitations that he accepts as credible." *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). Given the sufficient discussion of medical evidence and claimant's credibility, as discussed above, we find these hypotheticals were appropriate. Because the ALJ properly relied upon the VE testimony in response to the hypothetical question, this is not a sufficient basis for remand.

## III. CONCLUSION

For the reasons set forth above, claimant's motion for summary judgment is denied and the Commissioner's cross-motion for summary judgment is granted. It is so ordered.

**Dated:  October 19, 2018**  _____
**Michael T. Mason**
**United States Magistrate Judge**